STATE *v.* GORDON W. BRIGGS.

| 9 | 361 |
| 18 | 221 |
| 9 | 361 |
| 22 | 358 |

The testimony of a husband which may tend to criminate his wife, or the testimony of a wife which may tend to criminate her husband, is admissible in a collateral proceeding, provided that no use can afterwards accrue therefrom in any direct proceeding against either of them. But a husband or wife objecting to give such testimony will be entitled to the protection of the court.

In a criminal proceeding, a witness who had testified against the defendant was asked certain questions, apparently with a view to show that he had endeavored to obtain money from the defendant for absenting himself as a witness. A promissory note, signed by the defendant, was then offered and admitted in evidence, and the witness was allowed to testify that it was received by him as a consideration for so absenting himself, from a man he did not know and had not seen since. *Held,* that the note was improperly admitted in evidence, no evidence having been produced to connect the defendant with it, or to show that he signed it.

*Held, further,* upon motion for new trial, after conviction, that the note having been improperly admitted in evidence, a new trial must be granted, notwithstanding the jury were charged that there was no proof that the defendant wrote the note, and that the government had failed to connect it with the defendant.

INDICTMENT against the defendant for procuring an abortion on one Mary Jane Fisher. At the trial of the indictment before Mr. Justice Burges and a jury, at the March term of the Court of Common Pleas for the county of Providence, 1868, a verdict of guilty was returned by the jury, whereupon the defendant alleged exceptions, the substance of which are stated in the opinion of the court.

*B. N. & S. S. Lapham, for defendant:—*

The defendant's exception to the admission of the testimony of Edwin A. Hacket should be sustained. A married woman or a married man is incompetent to testify in a suit between others to any matters for which the other might be indicted, 1 Starkie on Evidence, p. 69 ; *The King* v. *Cliviger,* 2 Term. 263 ; 1 Greenleaf on Evidence, p. 451 ; *Stewart* v. *Johnson,* 3 Harrison, 88. Nor does it make any difference when the relation commenced. 1 Greenleaf on Evidence, p. 452. Nor will consent of the other remove the disability. Ib. 456 ; Wharton's Criminal Law, 358 ; *Canton* v. *Bentley,* 11 Mass. 441. A husband

cannot be admitted to testify against a man for adultery committed with his wife, *State* v. *Welch*, 26 Maine, 30. Husband and wife cannot be admitted as witnesses to discover even collaterally the guilt of the other. *Steer* v. *Bowman*, 13 Pet. 209.

The exception to the admission of the testimony of Mary J. Hacket should also be sustained. The same authorities are applicable to this as in the point above.

The paper purporting to be signed by Gordon W. Briggs, should not have been presented to the jury until some proof was offered to show that it was in his hand writing, or that he had some connection with it. No such proof was offered either before or after its admission.

*The Attorney General, Willard Sayles, Esq., for the State :—*

I. While husband and wife cannot be permitted to testify against each other, yet they may be witnesses in collateral matters, and give testimony which may implicate and tend to criminate each other. 1 Greenleaf on Evid. §§ 340, 341, 342; Phillips on Evidence, pp. 67 to 70; Roscoe's Crim. Ev. 117, 144; 2 Russell on Crimes, p. 982.

II. They may not be compelled to testify against each other. See authorities above. But these witnesses testified voluntarily.

III. To the second position, it is enough to say, that it was never claimed nor assumed by the prosecution, that the defendant signed said note, or gave it to the witness. And further, that the judge who presided ruled out said note in his charge to the jury. See U. S. Crim. Dig. p. 180, § 503; refers to *State* v. *Ford*, 3 Strob. 517.

DURFEE, J. The defendant was convicted in the Court of Common Pleas on an indictment for procuring an abortion on one Mary Jane Fisher. The case comes up on a bill of exceptions for alleged erroneous rulings of the court below. The first two exceptions are based on the following grounds, to wit. : That the said Mary Jane Fisher was at the time of the alleged offence a single woman, having never been married; that she afterwards intermarried with one Edwin A. Hacket; that said Hacket was the person by whom she was got with the child for whose miscarriage she was operated on; that said Hacket em-

ployed the defendant to perform the operation, and came to him with the said Mary Jane for the purpose of having it performed ; that on the trial of the defendant in the court below, the said Hacket and his wife were called on as witnesses for the government, and admitted to testify against the objection of the defendant,—the objection being that the testimony of each of them would tend to criminate the other of an indictable offence—that is to say, her of the offence of fornication, and him of participation in the offence for which the defendant was indicted.

The question as to how far the testimony of a husband which may tend to criminate his wife, or the testimony of a wife which may tend to criminate her husband, is admissible in a collateral proceeding, is not satisfactorily settled by precedent. In the case of *The King* v. *Cliviger*, 2 Term, 263, it was thought that such testimony was inadmissible from reasons of public policy, to avoid dissensions between husband and wife. That was a case of settlement, where a marriage in fact had been proved, and, the husband having given testimony denying a previous marriage, it was held that the first wife could not be called to prove the same, as it would tend to criminate him in respect of two crimes,—bigamy and perjury. But in two cases subsequently decided, where the question was the same, except that the husband had not given testimony denying his previous marriage, it was held that the first wife was a competent witness to prove such previous marriage. *The King* v. *All Saints*, 6 M. & S. 194; *Rex* v. *Bathwick*, 2 B. & Ad. 639. In these two cases, the rule declared in *The King* v. *Cliviger* may be regarded a having been qualified, at least, so far as to recognize the competency of husband and wife as witnesses in collateral cases, where the testimony of the one of them who is called as a witness can. criminate the other only when connected with other evidences Indeed, the language of Tentenden, C. J., in *Rex* v. *Bathwick*, is consistent with the admission of such testimony collaterally to any extent, provided that no use can afterwards accrue therefrom in a direct proceeding. See Roscoe's Crim. Ev. 118 and 144; 1 Greenleaf's Ev. § 242, and 1 Phillips on Ev. 84, 85, in which, however, it is stated that in *The King* v. *Gleed*, 2 Russ,

on Crimes, 983, the rule of exclusion was applied, though *Rex* v. *Bathwick* was cited in the case. And see, also, remarks of Earle, J. in *Stapleton* v. *Croft*, 10 Eng. L. & Eq. 461, 462. In the case of the *State of Wisconsin* v. *Dudley*, 7 Wis. 664, on the trial of an indictment for adultery committed by the defendant with the wife of a man who had subsequently procured a divorce, it was held that the divorced husband was a competent witness to prove his marriage with his divorced wife. In *State* v. *Marvin*, 35 N. H. 22, on a similar indictment, the husband testified without objection to the marriage and to the fact of the adultery ; but, being asked if he lived with his wife at the time of the trial, answered that he did not. To this last statement the defendant objected, but the objection was overruled, and it was held, on a motion to set aside the verdict, to have been properly admitted.

We find no American decision, with the exception of the two above stated, (if they can be deemed an exception,) which sanctions the unqualified admissibility of such testimony in a collateral proceeding. It has been decided in four different states, that on the trial of an indictment against a man for adultery, the husband of the woman with whom the crime is alleged to have been committed, is not a competent witness to prove the fact. *State* v. *Gardner*, 1 Root, (Conn.) 485 ; *State* v. *Welch*, 26 Maine, 30 ; *State* v. *Wilson and Wagner*, 31 N. J. 77 ; *Commonwealth* v. *Sparks*, 7 Allen, 534. In the last named case, Merrick, J., in delivering the opinion of the court, said : " It has never been determined that a husband or wife is admissible as a witness in any collateral proceeding, to testify directly to the commission of any criminal act of the other. Nor ought such testimony to be received in any proceeding or upon any trial ; for, as nothing would be more likely to exasperate the parties and be the means of implacable discord and dissension between them, its admission would be a violation of that principle of public policy upon which the general rule of their exclusion as witnesses against each other is founded." And see also, *Canton* v. *Bentley*, 11 Mass. 441 ; *Stein* v. *Bowman*, 13 Pet. (U. S.) 209 ; *Stewart* v. *Johnson*, 3 Harrison, (N. J.) 89 ; *People* v. *Horton*, 4 Mich. 87 ; Mich. Dig. § 1665.

In *The State* v. *Wilson and Wagner*, 31 N. J. 77, it was held that the husband was not a competent witness on the trial of an indictment against a man for adultery with his wife, even after the acquittal of the wife who had been jointly indicted with the accused.

We may remark of the class of cases, to which the case last cited belongs, that it may be doubted whether, as a matter of fact, it would often happen, after the adultery of the wife, that there would be much marital harmony to be endangered by the testimony of the husband against her paramour.

Some of these cases recognize the distinction, suggested in the cases of *Rex* v. *All Saints* and *Rex* v. *Bathwick*, between testimony which is directly criminative and that which is criminative only when connected with other testimony,—a husband and wife being deemed competent witnesses to give testimony, in collateral cases, which relate to the other, when it is of the latter, but not when it is of the former description. But upon principle we find no satisfactory ground for the distinction. The supposed disqualification of husband and wife to give, in collateral cases, testimony directly criminative of each other, is said to rest on the policy of avoiding dissensions between husband and wife; and, if so, the disqualification ought to be complete, for such dissensions, differing only in degrees of virulence, would be likely to result from testimony which tends to criminate, as well as from that which is directly criminative. There are logically only two alternatives,—either to exclude the testimony entirely, or to admit it to any extent in collateral proceedings, provided that no use can afterwards accrue therefrom in any direct proceeding. We think it the better rule, subject to such proviso, to admit the testimony. We think the language used by at least one of the judges in *Rex* v. *All Saints*, and by Lord Tenterden in *Rex* v. *Bathwick*, is open to the inference that they would have gone as far if these cases had required it. There are cases in which the interests of justice seem to require that such should be the rule. Neither can we perceive that any special mischief will be likely to result from it; for the testimony, being given in a collateral

proceeding, could have effect only as information against the husband or wife, there being no contradiction between them, and there is but slight reason for supposing that the witness would *willingly* communicate under oath any information which would otherwise be withheld. Generally, indeed, it is pretty well known, either from the witness himself or otherwise, what he can testify before he takes the stand. If we accord to the witness the privilege of objecting to testify on the ground that the testimony, if given, will criminate, or tend to criminate, a husband or wife, we think that, in a proceeding which can never be used against the husband or wife, there is no sound principle of public policy which requires that we should go still further, and put it in the power of a third person, by objecting when the witness does not object, to defeat, it may be, a just claim, or escape a merited punishment.

We concur in the opinion expressed by Mr. Justice Bailey in *Rex* v. *All Saints*, that a husband or wife, objecting to give such testimony, would be entitled to the protection of the court.

The case at bar presents some peculiarities which, even if the true rule be that which is contended for on the part of the defendant, might lead us to question its applicability. It is a case in which the husband and wife were both witnesses, and both, so far as appears, willing witnesses, and in which each testified to the facts which are claimed to make the testimony of the other inadmissible. It is not, therefore, a case in which either can properly make the testimony of the other a ground for conjugal dissension ; and consequently it might be urged that the case is not within the rule, as the same is contended for on the part of the defendant, inasmuch as it is not within the reason of the rule,—*ratione cessante, cessat ipsa lex.* If, however, the case is not an exception to the rule, but an example under it, it is an example which aptly exemplifies its irrationality in some of its applications.

But we think the true rule is not in accordance with the defendant's claim, but in accordance with the opinion which we have previously expressed, and that, accordingly, the testimony of Edwin A. Hacket and Mary Jane Hacket was admissible on

the trial of the indictment against the defendant. We therefore overrule the first two exceptions specified in the defendant's bill of exceptions.

In the case at bar, the husband and wife, though both were witnesses, did not contradict each other, as in *Rex* v. *Cliviger*, and, therefore, the question whether the one having testified the other could be allowed to give contradictory testimony, did not arise, and we express no opinion upon it. When we speak of *criminative* testimony, we use the words in their more common acceptation.

The third exception relates to the note signed G. W. Briggs, which the said Hacket testified was received by him, as a consideration for going away, from a man he did not know and had not since seen, and which was admitted in evidence, though no testimony was produced to connect the defendant with it, or to show that he signed it. It appears by the statement appended to the allowance, that the note was offered after certain questions had been put to the witness, apparently with a view to show that the witness had endeavored to get from the defendant $2500 for absenting himself as a witness; that the attorney general did not comment on said note as having been made by the defendant, or by his authority, or attempt to use it in any way except to rebut the idea that said Hacket had tried to extort money from the defendant; and that the judge charged that the government had failed to connect the note with the defendant, and that there was no proof that the defendant wrote it.

We think the note, there being no testimony to connect the defendant with it, was inadmissible for the prosecution. It had no tendency to prove the guilt of the defendant, or to rebut any imputation implied in the cross examination; for the fact that the witness had received money and a note from a stranger for absenting himself, afforded no legitimate inference that he would not attempt to extort money from the defendant for the same thing. If the admission of the note were a trifling matter, and had been clearly excluded by the judge in his charge, we might not consider it a sufficient ground for a new trial. But we are not prepared to say that the admission of the note was a trifling

matter.    On the contrary, if the other testimony had left the case in doubt, it is quite conceivable that the admission of this note, *bearing the defendant's signature*, taken in connection with the testimony as to the manner in which it came into the hands of the witness, might have turned the scale against the defendant. Inasmuch as this may have been so, we do not feel at liberty to presume conclusively that it was not so.    The bill of exceptions does not purport to give a complete report of the testimony upon which the case was submitted to the jury.

We sustain the third exception, and grant the defendant a new trial.

*New trial granted.*    .